# United States Court of Appeals for the Federal Circuit

---

**VIET I-MEI FROZEN FOODS CO., LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, AD HOC SHRIMP TRADE ACTION COMMITTEE,**
*Defendants-Appellees*

---

2016-1006

---

Appeal from the United States Court of International Trade in No. 1:14-cv-00092-DCP, Judge Donald C. Pogue.

---

Decided: October 11, 2016

---

MATTHEW R. NICELY, Hughes Hubbard & Reed LLP, Washington, DC, argued for plaintiff-appellant. Also represented by DANIEL MARTIN WITKOWSKI.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON, PATRICIA M. MCCARTHY, JOSHUA E. KURLAND; MYKHAYLO GRYZLOV, Office of Chief Counsel for

Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

MEIXUAN LI, Picard Kentz & Rowe LLP, Washington, DC, argued for defendant-appellee Ad Hoc Shrimp Trade Action Committee. Also represented by NATHANIEL RICKARD, ANDREW WILLIAM KENTZ, ROOP BHATTI.

———————————

Before PROST, *Chief Judge,* CHEN and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge.*

Viet I-Mei Frozen Foods Co., Ltd., successor in interest to Grobest & I-Mei Industrial (Vietnam) Co., Ltd. (collectively Grobest), appeals the decision of the Court of International Trade (CIT) affirming the U.S. Department of Commerce's final results in the reconducted fourth administrative review of the antidumping duty order on certain frozen warmwater shrimp from Vietnam. *See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 79 Fed. Reg. 15,309 (Dep't of Commerce Mar. 19, 2014) (final results of reconducted administrative review of Grobest and intent not to revoke) (Reconducted Final Results). Grobest argues that the CIT erred in sustaining Commerce's decision to refuse Grobest's request to terminate the individual examination of Grobest and also erred in sustaining Commerce's decision to assign a 25.76% antidumping duty rate using adverse facts available after Grobest failed to cooperate with the examination. *See Viet I-Mei Frozen Foods Co. v. United States*, 83 F. Supp. 3d 1345 (Ct. Int'l Trade 2015). For the reasons below, we affirm.

BACKGROUND

A.

The antidumping statute provides for the assessment of remedial duties on foreign merchandise sold in the United States at less than fair market value that materially injures or threatens to injure a domestic industry. *See* 19 U.S.C. § 1673. An antidumping duty reflects the amount by which the normal value exceeds the export price of the merchandise. *Id.* §§ 1673e(a)(1), 1677(35). Under the statute, Commerce is generally charged with determining individual dumping margins for each known exporter and producer of the subject merchandise and assigning each an individual duty rate. *Id.* § 1677f–1(c)(1). Each year, Commerce provides interested parties with an opportunity to request an administrative review of exporters and producers covered by the order to reevaluate the propriety of the assigned duty rate. *Id.* § 1675(a)(1)(B). In particular, an interested member of the affected domestic industry may request an administrative review of the duty order if it believes a currently assigned rate is too low. 19 C.F.R. § 351.213(b)(1). Conversely, an exporter or producer may request administrative review of the order if it believes its currently assigned rate is too high. *Id.* § 351.213(b)(2). Absent such a request for review, the duty continues to be assessed at the preexisting rate. *Id.* § 351.212(c)(1)(i).

In cases where a large number of exporters and producers are involved in an administrative review proceeding and it is not practical to determine individual rates for each, the antidumping duty statute allows Commerce to limit individual examination to a reasonable number of companies. 19 U.S.C. § 1677f–1(c)(2). In such cases, Commerce generally selects a subset of companies for mandatory review and determines an individual dumping rate for each of those mandatory respondents. A company that is not selected for individual examination as a man-

datory respondent will generally receive what is known as the "all-others" rate. *See id.* § 1673d(c)(1)(B)(i)(II).

In addition, a company not selected for individual examination may voluntarily submit questionnaire responses containing all of the information requested from mandatory respondents and request individual examination under 19 U.S.C. § 1677m(a)(1).[1] However, Commerce may decline to fully investigate the respondents seeking voluntary examination if it determines that the number of exporters or producers who have submitted such requests is so large that individual examination of these voluntary respondents "would be unduly burdensome and inhibit the timely completion of the investigation." *Id.* § 1677m(a)(2). Thus, in the typical proceeding, an exporter or producer may receive an individual duty rate as either a mandatory or voluntary respondent or the "all-others" rate if not individually examined.

Proceedings involving a nonmarket economy (NME) country operate slightly differently than the typical proceeding covering goods exported from a country with a market-based economy. Because an NME does not operate on market principles of cost or pricing structures, the normal value may not reflect the fair value of the merchandise. *See id.* § 1677(18)(A). In NME proceedings, Commerce begins with the presumption that all respondents in the investigation are under foreign government control and should receive a single countrywide dumping rate. *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1348 (Fed. Cir. 2016). This presumption is

---

[1]    These questionnaires generally seek corporate information, including corporate and business structure, affiliations with other companies, and ownership details, as well as sales and production data. Commerce may also issue supplemental questionnaires if additional information is required.

rebuttable and a company importing goods covered by the order can prove, through responses to a separate rate questionnaire, that it is not subject to government control and is entitled to a separate, individualized rate. *See, e.g.*, *Transcom, Inc. v. United States*, 294 F.3d 1371, 1373 (Fed. Cir. 2002). Thus, in NME proceedings, a company that demonstrates its entitlement to separate rate status receives either an individual rate (as a mandatory or voluntary respondent) or the weighted-average separate rate (if individual examination is impractical or unduly burdensome). And a company that fails to demonstrate independence from the NME country receives the higher countrywide rate.

## B.

On February 1, 2005, Commerce made a final determination that certain frozen warmwater shrimp from Vietnam were likely being sold at less than fair market value and published a duty order directing customs officers to assess antidumping duties on imports of the subject merchandise. *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 70 Fed. Reg. 5,152 (Dep't of Commerce Feb. 1, 2005) (notice of amended final determination of sales at less than fair value and antidumping duty order). Vietnam is designated as a NME country and Commerce begins with a rebuttable presumption that a company operating within Vietnam is subject to state control. *See Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam*, 69 Fed. Reg. 71,005 (Dep't of Commerce Dec. 8, 2004). Commerce presumptively applies a single countrywide antidumping rate of 25.76%—the Vietnam-wide rate—to all imports of frozen warmwater shrimp from Vietnam.

Grobest is a producer of frozen warmwater shrimp from Vietnam covered by the antidumping duty order. Although not individually examined as a mandatory or

voluntary respondent during the first three administrative review periods (AR1–AR3), Grobest demonstrated its entitlement to separate rate status and was assigned—for reasons not relevant here—a separate antidumping duty rate of 0% in each review period.[2]   In February of 2009, Grobest and the domestic industry of warmwater shrimp producers—the Ad Hoc Shrimp Trade Action Committee (the Domestic Producers)—each submitted separate requests for review of Grobest in the fourth administrative review of the duty order (AR4), covering the period of February 1, 2008, through January 31, 2009.

In March 2009, Commerce initiated the review of nearly 200 exporters and producers for AR4.  Because of the large number of companies involved in AR4, Commerce determined that individual examination of each would be impractical.  Instead, as it had done in previous review periods, Commerce selected for mandatory individual examination the two largest companies by volume—Minh Phu Group and Nha Trang Seafoods. Although not selected as a mandatory respondent, Grobest requested to be individually examined for AR4 as a voluntary respondent pursuant to 19 U.S.C. § 1677m(a), rather than receive the all-others separate-rate.  Commerce declined to examine Grobest individually and on

---

[2]   *See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 72 Fed. Reg. 52,052 (Dep't of Commerce Sept. 12, 2007) (final results of the first antidumping duty administrative review and first new shipper review); *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 73 Fed. Reg. 52,273 (Dep't of Commerce Sept. 9, 2008) (final results of second administrative review); *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 74 Fed. Reg. 47,191 (Dep't of Commerce Sept. 15, 2009) (final results of third administrative review).

August 9, 2010, published the Final Results for AR4. Minh Phu Group was assigned an individual rate of 2.96%, Nha Trang Seafoods was assigned a rate of 4.89% and Grobest, like all other non-selected companies satisfying the requirements for separate-rate status, received the average of the mandatory respondents' margins—i.e., 3.92%. Companies that did not demonstrate freedom from government control sufficient to achieve separate-rate status received the Vietnam-wide rate of 25.76%.

Grobest brought suit in the CIT on August 19, 2010, challenging Commerce's refusal to individually examine Grobest as a voluntary respondent.[3] Grobest argued the refusal was unlawful because Commerce is required to examine any company that seeks individual review unless it would be unduly burdensome pursuant to 19 U.S.C. § 1677m(a)(2). And, according to Grobest, Commerce's justification for not individually examining Grobest was lacking. After nearly two years of litigation, the CIT agreed with Grobest and ordered Commerce to examine Grobest as a voluntary respondent. *See Grobest & I-Mei Indus. (Vietnam) v. United States*, 853 F. Supp. 2d 1352, 1362 (Ct. Int'l Trade 2012); *Grobest & I-Mei Indus. (Vietnam) v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012). The CIT entered Final Judgment on September 13, 2012, ordering that Commerce "shall re-conduct its administrative review . . . of the anti-dumping order . . . by individually examining Grobest as a voluntary respondent." JA3246.

On October 17, 2012, Commerce published a notice that it would conduct the administrative review of

---

[3] Shortly thereafter, on December 31, 2010, Grobest & I-Mei's shrimp processing operation was purchased by Viet I-Mei, who continued to press for individual examination and assignment of an individualized antidumping rate for Grobest in AR4.

Grobest consistent with the CIT's Final Judgment. *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 77 Fed. Reg. 63,786 (Dep't of Commerce Oct. 17, 2012) (notice of court decision not in harmony with final results of administrative review, notice of re-conducted administrative review of Grobest & I-Mei Industrial (Vietnam) Co., Ltd., and notice of amended final results of administrative review). But then Grobest had a change of heart. On December 12, 2012, less than two months later, Grobest submitted a request to withdraw its participation from the individual examination that it had been fighting for years to secure. Grobest stated that its reversal of position was "due to the significant management, personnel and accounting changes that have occurred . . . since the time of the period of review." JA3275. Without any explanation, Grobest continued that "[i]n short, the administrative and legal costs of this examination are greater than the company wishes to incur at this time." *Id.* Instead, Grobest requested to be given the 3.92% separate rate it previously disputed.

Commerce did not respond to Grobest's withdrawal request and issued a supplemental questionnaire seeking clarification of discrepancies in Grobest's previously reported data and further details concerning Grobest's affiliations. Commerce warned Grobest that failure to provide complete and accurate information by the response deadline of January 29, 2013 may result in a finding based on adverse facts available. The Domestic Producers voiced their objection to Grobest's request to withdraw in a letter to Commerce on January 25, 2013. And on the response due date, instead of providing answers to the questionnaires or requesting an extension of time to do so, Grobest submitted a second request to rescind the examination.

On February 6, 2013, Commerce indicated its intent to proceed with the individual examination of Grobest and it again sought answers to the supplemental question-

naire, extending the deadline to February 13, 2013. Commerce reiterated that failure to cooperate may result in the application of adverse facts to arrive at a rate. Once again, on the due date set by Commerce, Grobest refused to answer the questionnaire and instead submitted a third request to discontinue examination, claiming again that it no longer wished to continue with the examination because the costs of proceeding were greater than the company wished to incur.

In September 2013, Commerce issued the preliminary results of the reconducted AR4 review of Grobest (Reconducted Preliminary Results). In response to Grobest's requests to forgo the individual examination ordered in the CIT's Final Judgment, Commerce stated it "does not consider that the circumstances here warrant such a departure." JA3313. Commerce went on to explain:

> Grobest's principle [sic] contention is that it is unwilling to incur the administrative and legal costs associated with participating in the administrative review. However, a company may not impede an antidumping proceeding by refusing to incur administrative and legal costs associated with participating in the proceeding. Moreover, the Department has spent significant resources as a result of Grobest's challenge to the Department's original decision not to review Grobest individually.

*Id.* Turning next to the appropriate rate to assign Grobest, Commerce preliminarily determined that Grobest failed to cooperate by not acting to the best of its ability to comply with repeated requests for information and impeded the proceeding within the meaning of 19 U.S.C. §§ 1677e(a)(2) and 1677e(b). Commerce noted that under such circumstances, the agency consistently assigns an adverse facts available (AFA) rate equal to the highest rate determined for any respondent in any seg-

ment of the proceeding. Thus, it assigned Grobest an AFA rate of 25.76%—the Vietnam-wide rate assigned to those companies unable to establish an entitlement to separate rate status. Commerce explained that this rate "is appropriate for Grobest in that it is sufficient to ensure that Grobest does not benefit from failing to cooperate in [the reconducted] review by refusing to respond to [Commerce]'s request for complete information regarding its affiliations, sales of subject merchandise, and factors of production." JA3315.

Grobest requested that Commerce reconsider its conclusions in the Reconducted Preliminary Results. Grobest first argued that Commerce should rescind the reconducted review because the CIT's Final Judgment should not be considered binding on Commerce and Grobest filed a request to withdraw within the 90-day time period pursuant to 19 C.F.R. § 351.213(d)(1). Grobest went on to argue that it would not gain any undue or unfair advantage if it withdrew its voluntary respondent request. The Domestic Producers, in turn, presented a different explanation for Grobest's new position. They argued that Grobest's decision to withdraw was driven by a desire to avoid disclosing its affiliation with companies recently found to have committed material misrepresentations in connection with efforts to evade antidumping duties on warmwater shrimp from Vietnam and China. They then urged that Grobest's "[a]voidance of [Commerce's] affiliation inquiry should be given weight in interpreting and evaluating Grobest's explanation for declining to further participate in a proceeding that it requested." JA3369. The Domestic Producers concluded that "the respondent's own actions led directly to it being preliminarily assigned the 25.76% Vietnam-wide rate as AFA." JA 3373.

In March, 2014, Commerce published the Reconducted Final Results, in which it continued to reject Grobest's request to rescind the examination and affirmed its decision to apply the Vietnam-wide rate of 25.76%. Com-

merce reasoned that the CIT had "specifically ordered [Commerce] to conduct an individual examination of Grobest, [and] rescission would be in conflict with the CIT order and judgment." JA3376-77. Commerce next explained that Grobest's reliance on 19 C.F.R. § 351.213(d)(1) was misplaced because that regulation pertains to withdrawal of an initial request for administrative review and not a request for individual examination as a voluntary respondent. Even if the regulation was applicable, Commerce explained that such a request must be made within ninety days of the initiation of the administrative review (which had long since passed) and must also be made by all parties who requested the administrative review (including the Domestic Producers who had not withdrawn their request for review and opposed Grobest's request to withdraw). Commerce concluded that "the unique circumstances surrounding this review, including the Final Judgment and the request for review by Petitioners" weighed against rescinding the voluntary review of Grobest. Commerce also noted the seriousness of the Domestic Producers' allegation of a scheme to avoid antidumping duties, but declined to consider it in making its determination due to the lack of supporting evidence in the record.

Grobest filed a complaint with the CIT, appealing Commerce's Reconducted Final Results. Before the CIT, Grobest argued that Commerce unlawfully refused to permit Grobest to withdraw its individual review request and that Grobest's assigned rate was retaliatory and impermissibly punitive. Grobest acknowledged that the statutory and regulatory framework does not expressly contemplate a voluntary respondent's rescission of a request for individual examination. However, it argued that the 90-day deadline found in 19 C.F.R. § 351.213(d)(1), applicable to rescinding an administrative review generally, should also apply to its request to withdraw from the CIT's ordered individual review.

Given that it made its withdrawal request within ninety days of the start of the reconducted review, Commerce, according to Grobest, could not have expended significant resources during that limited time frame, and the Domestic Producers would not be prejudiced because Grobest would still be assigned the separate rate of 3.92% for AR4.

Commerce, for its part, stressed to the CIT that there was no regulation requiring Commerce to terminate the proceeding and the 90-day grace period contemplated by 19 C.F.R. § 351.213(d)(1) was simply inapplicable. Commerce explained that under 19 C.F.R. § 351.204(d)(2), voluntary respondents selected for examination are to be treated like mandatory respondents. And mandatory respondents are not permitted to unilaterally dictate their level of involvement in the proceeding. Even if Commerce was to look to 19 C.F.R. § 351.213(d)(1) for guidance, it contended that the legislative history of the statute authorizing Commerce to conduct an administrative review makes clear "Commerce could rightfully continue a review in which there is an expressed interest," further indicating that Grobest had no entitlement to withdraw, especially in light of the Domestic Producers' objection to rescinding the examination. According to Commerce, the CIT's command to review Grobest and the weakness of Grobest's excuse for discontinuing the review at such a late hour further counseled against withdrawal. Commerce thus argued that it reasonably determined to proceed with the examination and to use AFA when Grobest withheld information and failed to cooperate to the best of its ability.

Following briefing and oral argument, the CIT sustained Commerce's Reconducted Final Results. *Viet-I Mei Frozen Foods Co. v. United States*, 83 F. Supp. 3d 1345 (Ct. Int'l Trade 2015). The CIT found Grobest's professed reasons for requesting withdrawal unpersuasive, noting:

> [T]his change of ownership occurred nearly two years prior to the entry of judgment, in favor of Grobest, on its initial request for individual examination. In that time, Grobest could easily have voluntarily dismissed its litigation in demand of individual examination (thereby obtaining the very result that Grobest now seeks), but chose not to do so.

*Id.* at 1356–57. The CIT also noted that Commerce was not required by any statutory or regulatory authority to terminate the examination. *Id.* at 1362. In addition, the CIT found that sound policy considerations warranted Commerce's treatment of voluntary respondents as mandatory respondents with no right to withdraw. *Id.* It went on to find Commerce's assignment of the Vietnam-wide rate of 25.76% was appropriate and not punitive given Grobest's failure to cooperate. *Id.* at 1363. Grobest timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

This court reviews a CIT decision regarding Commerce's antidumping determinations de novo, applying the same standard used by the CIT in evaluating Commerce's determinations, findings, and conclusions. *Apex Exports v. United States*, 777 F.3d 1373, 1377 (Fed. Cir. 2015). We will uphold Commerce's decision unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is defined as evidence that a "reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). An agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

I.

We turn first to Grobest's argument that Commerce erred when it denied Grobest's request to rescind the reconducted individual examination. Grobest concedes that voluntary respondents, once selected, do not have an absolute right to determine whether an individual examination will proceed. Nevertheless, it argues that Commerce was required to terminate the individual examination of Grobest based on the circumstances here.

The foundation for Grobest's argument is that the administrative and policy concerns embedded in 19 C.F.R. § 351.213(d)(1), which relates to complete rescission of an administrative review, should also be used to judge the reasonableness of Commerce's treatment of requests by voluntary respondents to withdraw from individual examination. Under the regulation, if a request to rescind is made within ninety days of the notice of initiation of the administrative review, Commerce will grant the request. Otherwise, Commerce retains the discretion to rescind outside the 90-day window but may take into account whether, for example, Commerce has devoted considerable time and resources to the review. Grobest argues that in promulgating this regulation, Commerce was seeking to strike a balance between the party's interests in foregoing examination and maintaining the status quo with Commerce's need to avoid procedural abuses and wasting resources. It reasons that Commerce should likewise conduct the same inquiry when a voluntary respondent is in the analogous position of seeking to cancel an individual examination (within an ongoing review) it has requested. Having set the stage for its view of how Commerce should have approached the inquiry, Grobest argues that Commerce misevaluated the circumstances here.

First, Grobest contends that Commerce incorrectly believed it was bound as a matter of law by the CIT's earlier Final Judgment ordering Commerce to conduct an individual examination of Grobest and similarly bound by the

Domestic Producers' objection to rescinding the examination. It thus argues that Commerce improperly failed to consider the circumstances weighing in favor of rescinding the voluntary review. Next, Grobest argues that to the extent Commerce undertook any evaluation of the circumstances, Commerce's analysis was unreasonable given the timing of Grobest's request within the 90-day deadline set forth in 19 C.F.R. § 351.213(d)(1) and the fact that Commerce could not have yet expended considerable resources in connection with the reconducted examination.

Like Commerce and the CIT, we reject Grobest's attempt to analogize its request to withdraw from the individual examination as a voluntary respondent with a withdrawal of a request for an administrative review under 19 C.F.R. § 351.213(d)(1). The regulations lack any "90-day provision" that permits a voluntary respondent like Grobest to withdraw from an instituted individual examination and we decline Grobest's invitation to essentially promulgate one. Moreover, this court has previously recognized that Congress intended to allow Commerce the authority to avoid the investigative burden associated with an administrative review in situations where the domestic industry has no continued interest in proceeding. *See Oregon Steel Mills Inc. v. United States*, 862 F. 2d 1541, 1545–46 (Fed. Cir. 1988) (citing H.R. REP. NO. 98-1156, at 181 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 5220, 5298) and noting "[a]dministrative reviews . . . are expensive and burdensome. If industry interest is lacking, Congress intended to eliminate that investigative burden"); *see also Ferro Union v. United States*, 44 F. Supp. 2d 1310, 1315–16 (Ct. Int'l Trade 1999) (noting Commerce's well-established policy of not rescinding a party's review under 19 C.F.R. § 351.213(d)(1) if another interested party has expressed a desire to continue). Unlike a complete rescission where the domestic industry no longer seeks the assessment of any duties, the Domes-

tic Producers here expressed a continued and keen interest in having Commerce follow through with an individual examination of Grobest. In addition, because Grobest's preferred outcome would not lead to the entire rescission of the administrative review, its request will not entirely eliminate the expense and burden placed on Commerce in connection with the review. Thus, the policies underlying 19 C.F.R. § 351.213(d)(1) do not so easily match to the present situation where all parties, including Grobest, still seek continuing the administrative review and the Domestic Producers still seek examination of Grobest in particular.

If anything, Commerce's regulations point away from granting a voluntary respondent's request to cancel an individual examination it had requested. Under 19 C.F.R. § 351.204(d)(2), "[a] voluntary respondent accepted for individual examination . . . will be subject to the same requirements as an exporter or producer initially selected by [Commerce] for individual examination under [19 U.S.C. § 1677f–1(c)(2) as a mandatory respondent]." In other words, voluntary respondents, like mandatory respondents, cannot unilaterally dictate their level of participation once accepted for examination. As the CIT recognized below, "[i]f it were otherwise, the voluntary respondent process would be subject to potential manipulation by companies seeking individual review and then declining to proceed if the review started to look unfavorable." *Viet-I Mei Frozen Foods*, 83 F. Supp. 3d at 1358. Thus, Commerce was reasonable in treating Grobest as a mandatory respondent with no right to escape review once it was selected for individual examination pursuant to the CIT's Final Judgment. Nor was Commerce required by any statutory or regulatory authority to rescind the court-ordered individual examination simply because Grobest no longer wished to proceed, regardless of the timing of its rescission request.

We need not reach the issue of whether Commerce was in fact bound as a matter of law by the Final Judgment or the Domestic Producers' objection (which the CIT also chose not to address) because we disagree with Grobest's characterization of Commerce's justifications for denying Grobest's request to rescind the individual review. Contrary to Grobest's allegation, Commerce explained in the Reconducted Preliminary and Final Results that multiple factors, including but not limited to the Final Judgment and the Domestic Producers' objection, counseled against granting Grobest's request. Those additional considerations included Commerce's expenditure of resources to date and the insufficiency of Grobest's justification for seeking to avoid review. Thus, we reject Grobest's argument that Commerce somehow erred as a matter of law on that basis.

Moreover, we agree with Commerce that it was eminently reasonable for it to point to the CIT's Final Judgment as well as the Domestic Producers' objections to Grobest's sudden desire to withdraw as legitimate reasons to maintain the individual examination. And given the nature of the supplemental questionnaire, Commerce appeared to have reasonable concerns with the veracity or completeness of Grobest's previously submitted data, warranting further investigation. Grobest also does not meaningfully refute Commerce's justification that it was not inclined to rescind the individual examination because it had already expended considerable time and resources in connection with the individual examination. Commerce's efforts reviewing Grobest's initial questionnaire responses, identifying and documenting numerous discrepancies in Grobest's representations (including the company's affiliations, the quantity and value of its sales of subject merchandise, and factors of production), and formulating supplemental questions to address those concerns cannot be readily dismissed as insignificant.

These considerations all further support the reasonableness of Commerce's decision to continue the examination.

Conversely, Grobest's professed reason for withdrawing its request for review—the change in ownership—does not withstand scrutiny. The change of ownership from Grobest & I-Mei to Viet I-Mei took place in December 2010. Like Commerce and the CIT, we find unpersuasive Grobest's argument that it was not until years later, after the Final Judgment was entered and after the notice of reconducted examination was published in October 2012, that it appreciated the impact of this change in ownership.

We also find unpersuasive Grobest's argument on appeal that withdrawal was necessary because it was no longer confident in its ability to provide complete and accurate data. Grobest neither voiced that concern to Commerce nor did it take advantage of the statutory procedures designed to address those concerns.[4] Rather, it stated only that "the administrative and legal costs of this examination are greater than the company wishes to incur at this time." JA3275. But, as Commerce explained in its Reconducted Preliminary Results, a respondent has no legitimate interest in impeding Commerce's investigations simply to avoid the costs of participating.

---

[4] "If an interested party, promptly after receiving a request from [Commerce] for information, notifies [Commerce] that such party is unable to submit the information requested in the requested form and manner, together with a full explanation and suggested alternative forms in which such party is able to submit the information, [then Commerce] shall consider the ability of the interested party to submit the information in the requested form and manner and may modify such requirements to the extent necessary to avoid imposing an unreasonable burden on that party." 19 U.S.C. § 1677m(c)(1).

Accordingly, because Commerce's decision to continue the court-ordered individual examination was both a reasonable exercise of its authority and supported by substantial evidence, we affirm.

## II.

Grobest next challenges the application of AFA and specifically the assignment of the 25.76% Vietnam-wide rate. First, Grobest argues that the application of AFA was unreasonable because its inability to cooperate in the reconducted individual examination was the direct result of Commerce's prior unlawful actions and the years of litigation that ensued. Next, it argues that the specific AFA rate of 25.76%, more than five times the separate rate of 3.92%, was far beyond commercial reality and any deterrence factor warranted by the facts of this case. At most, Grobest argues, the proper adverse inference would have been to deny Grobest the benefit of voluntary examination and assign it the 3.92% separate rate it had fought for years to avoid.

During the course of an administrative review, when a respondent "withholds information that has been requested by [Commerce]," "fails to provide such information by the deadlines . . . or in the form and manner requested," "significantly impedes a proceeding," or "provides such information but the information cannot be verified," Commerce "shall" use "facts otherwise available" in reaching any necessary determinations. 19 U.S.C. § 1677e(a)(2)(A)–(D). If Commerce further finds a respondent has "failed to cooperate by not acting to the best of its ability to comply with a request for information," it "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b). In other words, it may apply a rate derived from adverse facts available. Commerce "may employ [such] inferences . . . to ensure that the party does not obtain a more favorable result by failing to

cooperate than if it had cooperated fully." Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA), H.R. Rᴇᴘ. Nᴏ. 103–316, vol. 1, at 870 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4199.

In selecting an AFA rate, Commerce may use information from the petition, investigation, prior administrative reviews, or "any other information placed on the record." 19 U.S.C. § 1677e(b); *see also Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (noting that "in the case of uncooperative respondents," Commerce has discretion to "select from a list of secondary sources as a basis for its adverse inferences"); *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

We first address Grobest's attempts to relieve itself from responsibility for Commerce's application of the AFA rules to derive a rate. Even if we were to accept Grobest's contention that it was unable to provide complete and accurate information due to the passage of time, that alone does not discharge its duty to act to the best of its ability in responding to Commerce's requests. Regardless of the circumstances that Grobest believed were the cause of its situation, "the statutory mandate that a respondent act to 'the best of its ability' requires the respondent to do the maximum it is able to do." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). Here, Grobest's rote explanation that it no longer wished to incur the costs of examination, its failure to explain the specific information it believed was missing or inaccurate, and its decision not to comply with the statutory procedures available to respondents with such concerns fall far short of Grobest's statutory obligation. Under these circumstances, we cannot say that Commerce's reliance on AFA was unreasonable.

We also reject Grobest's suggestion that at most an AFA rate of 3.92% would be appropriate here. That is the

same rate that was received by cooperative respondents and indeed is lower than the 4.98% rate assigned to mandatory respondent Nha Trang Seafoods, who fully cooperated with Commerce and justified its entitlement to its separate rate. Thus, Grobest's proposal would only incentivize gamesmanship and undermine the purpose of the AFA provisions if recalcitrant respondents like Grobest were rewarded with favorable rates over those given to fully cooperative respondents. *See* SAA at 870 (explaining that Commerce "may employ [such] inferences . . . to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully"). We find that substantial evidence supports Commerce's determination that the 25.76% Vietnam-wide rate was appropriate to ensure Grobest did not benefit from refusing to cooperate with Commerce's requests for complete information regarding its affiliations, sales of subject merchandise, and factors of production. Moreover, the selected rate was derived directly from the original investigation and corroborated by comparing the rate to the transaction-specific margins of cooperating respondents in AR4. Grobest has never meaningfully challenged this corroboration analysis or questioned the reliability of the Vietnam-wide rate. Thus, given Grobest's failure to cooperate in the examination and the lack of any specific challenge to Commerce's corroboration analysis, we find the application of the Vietnam-wide rate is amply supported by the record.

## CONCLUSION

For these reasons, we find no error in Commerce's refusal to discontinue the individual examination of Grobest and assignment of an AFA duty rate of 25.76% after Grobest repeatedly refused to cooperate with Commerce's requests for information. We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, the CIT's decision is *affirmed.*

## AFFIRMED

COSTS

No costs.