NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VINH HOAN CORPORATION,**
*Plaintiff-Appellant*

**ANVIFISH JOINT STOCK COMPANY, VINH QUANG FISHERIES CORPORATION, VIETNAM ASSOCIATION OF SEAFOOD EXPORTERS AND PRODUCERS, BINH AN SEAFOOD JOINT STOCK COMPANY,**
*Plaintiffs*

**v.**

**UNITED STATES, CATFISH FARMERS OF AMERICA, AMERICA'S CATCH, ALABAMA CATFISH, INC., DBA HARVEST SELECT CATFISH, INC., HEARTLAND CATFISH COMPANY, MAGNOLIA PROCESSING, INC., DBA PRIDE OF THE POND, SIMMONS FARM RAISED CATFISH, INC.,**
*Defendants-Appellees*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CATFISH FARMERS OF AMERICA, AMERICA'S CATCH, ALABAMA CATFISH, INC., DBA HARVEST SELECT CATFISH, INC., HEARTLAND CATFISH COMPANY, MAGNOLIA PROCESSING, INC., DBA PRIDE OF THE POND, SIMMONS FARM RAISED CATFISH, INC.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES, VIETNAM ASSOCIATION OF
SEAFOOD EXPORTERS AND PRODUCERS, BINH
AN SEAFOOD JOINT STOCK COMPANY,**
*Defendants*

**VINH HOAN CORPORATION,**
*Defendant-Appellant*

————————————

2018-2190

————————————

Appeal from the United States Court of International Trade in Nos. 1:13-cv-00138-CRK, 1:13-cv-00141-CRK, 1:13-cv-00155-CRK, 1:13-cv-00156-CRK, 1:13-cv-00159-CRK, Judge Claire R. Kelly.

————————————

Decided:  October 10, 2019

————————————

MATTHEW MCCONKEY, Mayer Brown LLP, Washington, DC, for appellant.  Also represented by GRETEL ECHARTE MORALES.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for appellee United States.  Also represented by JEANNE DAVIDSON, JOSEPH H. HUNT, PATRICIA M. MCCARTHY; DAVID W. RICHARDSON, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC.

JAMES R. CANNON, JR., Cassidy Levy Kent USA LLP, Washington, DC, for appellees Catfish Farmers of America,

America's Catch, Alabama Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc., Simmons Farm Raised Catfish, Inc. Also represented by JONATHAN M. ZIELINSKI.

———————————

Before NEWMAN, DYK, and CHEN, *Circuit Judges.*

Dyk, *Circuit Judge.*

Vinh Hoan Corporation ("Vinh Hoan") appeals the U.S. Department of Commerce's ("Commerce") determination in the eighth antidumping duty administrative review of frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam"). Vinh Hoan challenges the methodology used by Commerce in calculating the value of Vinh Hoan's fish oil by-product. This by-product was an offset used in calculating a constructed normal value for Vinh Hoan's frozen fish fillets from Vietnam. Because we agree with the Court of International Trade ("CIT") that the methodology was supported by substantial evidence and was not arbitrary and capricious or contrary to the law, we *affirm*.

I

The antidumping statute imposes duties on imports of foreign merchandise sold in the United States at less than fair value that threatens to or materially injures a domestic industry. *Viet I-Mei Frozen Foods Co. v. United States*, 839 F.3d 1099, 1101 (Fed. Cir. 2016). The imposed duty is "an amount equal to the amount by which the normal value exceeds the export price . . . for the merchandise." 19 U.S.C. § 1673. The export price is the price of the goods sold in the United States. The normal value of the merchandise is determined by considering the sales of the merchandise in either the home market or in a third country, or by a constructed value of the merchandise. 19 U.S.C. § 1677b(a), (e).

In cases where the merchandise originated from a non-market economy such as Vietnam, the "sales of merchandise in such country do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18) (A). The normal value of the merchandise in such countries is calculated "on the basis of the value of the factors of production utilized in producing the merchandise and to which shall be added an amount for general expenses and profit plus the cost of containers, coverings, and other expenses." 19 U.S.C. § 1677b(c)(1)(B). "[T]he valuation of the factors of production [is] based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by the administering authority." *Id.*

The factors of production include: hours of labor, quantities of raw materials used, amounts of energy and other utilities consumed, and capital costs. 19 U.S.C. § 1677b(c)(3). In valuing the factors of production, Commerce selects, "to the extent possible . . . prices or costs of [the] factors of production in one or more market economy countries that are—(A) at a level of economic development comparable to that of the nonmarket economy country, and (B) significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(4).

There are situations, and this is one of them, where the importer concurrently produces the imported product and a by-product of the imported product. This necessitates separation of the normal value of the by-product from the normal value of the imported product. The statute does not address offsets for by-products. *Am. Tubular Prods., LLC v. United States*, 847 F.3d 1354, 1361 (Fed. Cir. 2017) (citing 19 U.S.C. § 1677b(c)). Nevertheless, Commerce credits the respondent with the value of a by-product sold for profit in determining the normal value of the subject merchandise. *Guangdong Chems. Imp. & Exp. v. United States*, 460 F. Supp. 2d 1365, 1373 (Ct. Int'l Trade 2006).

Commerce has established a regulatory preference for valuing all factors of production from a single surrogate country wherever possible. 19 C.F.R. § 351.408(c)(2) ("Except for labor . . . the Secretary normally will value all factors [of production] in a single surrogate country."). Commerce selects the "best available information" for the factors of production and the by-product offset based on data where "prices [are] specific to the input in question, . . . are net of taxes and import duties, . . . are contemporaneous with the period of investigation or review, and [are derived from] publicly available data." Import Admin., U.S. Dep't Commerce, Non–Market Economy Surrogate Country Selection Process, Policy Bulletin 04.1 (2004), http://enforcement.trade.gov/policy/bull04-1.html; *see also Soc Trang Seafood Joint Stock Co. v. United States*, 365 F. Supp. 3d 1287, 1292 (Ct. Int'l Trade 2019) (discussing Commerce's selection of "best available information" for calculating the surrogate value of by-products). Ultimately, Commerce selects the "best available information" that allows it to achieve the purpose of the antidumping statute in calculating dumping margins "as accurately as possible." *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001) (quoting *Lasko Metal Prods., Inc. v. United States*, 43 F.3d 1442, 1446 (Fed. Cir. 1994)).

## II

In an eighth antidumping duty administrative review, Commerce calculated antidumping duties for frozen fish fillets imported in the United States. Calculating those duties required determining a constructed value for Vinh Hoan's frozen fish fillets (imported into the United States) excluding the value of the fish oil by-product (not imported into the United States). Vinh Hoan makes fish oil by saving fish scrap during the fillet production process, chopping, grinding, and cooking the scrap, pressing oil out of the scrap, and collecting the oil in a large vat. The oil is unrefined and is distributed to customers in Vietnam by

turning a spigot on the vat, which empties the oil into a customer's bucket.

In its final determination, Commerce initially selected data under the Indonesian Harmonized Tariff Schedule ("HTS") category 1504.20.9000 ("HTS data"),[1] as the best available information to value Vinh Hoan's fish oil by-product. The category is entitled "Fish Fats & Oils & Their Fractions Exc Liver, Refined or Not, Not Chemically Mod" and appears to be the only HTS category that includes unrefined fish oil. Commerce was concerned that the HTS data "may be an overly broad HTS category in which to value the respondents' fish oil, given that by its terms it may include refined fish oil." *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Issues and Decision Mem. for the Final Results of the Eighth Admin. Review and Aligned New Shipper Reviews* ("Final Decision Memo"), 78 ITADOC 17350, slip op. at 38 (issued Mar. 13, 2013).

To address this concern, Commerce capped the HTS data price by using Vinh Hoan's actual factors of production for fish waste, labor, sawdust, rice husks, coal, and electricity. The factors of production were valued by applying surrogate values previously selected for constructing the value of the frozen fish fillets to each respective factor of production.[2] The financial ratios (for selling, general

---

[1]     Commerce acquired these Indonesian import statistics from the Global Trade Atlas database. Import statistics are collected by a respective country's customs agency. *See Fuwei Films (Shandong) Co. v. United States*, 837 F.Supp.2d 1347, 1351–52 (2012).

[2]     *See Memo to File for 8th Administrative Review, and Aligned 9th New Shipper Reviews, of Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Surrogate Values for the Final Results* ("Surrogate Values

and administrative expenses, overhead, and profit) of an Indonesian fish producer, Indonesian PT Dharma Samudera Fishing Industries ("DSFI") were added to the factors of production to determine the final value.

On appeal, the CIT three times remanded Commerce's final determination for further proceedings. As is relevant here, the CIT asked Commerce to acknowledge that it was using a constructed value for the fish oil and was not using the constructed value to merely cap the HTS data.

In its third and last remand determination, Commerce admitted that it was in fact constructing the value of Vinh Hoan's fish oil. It explained that "while Indonesian HTS 1504.20.9000 meets many of the SV [surrogate value selection] criteria, it is overly broad and not specific to the low value, unrefined fish oil produced by Vinh Hoan, such that its use would lead to an unreasonable result." *Final Results of Redetermination Pursuant to Vinh Hoan Corporation et al. v. United States* ("Third Remand Decision"), slip op. at 10 (issued Sept. 22, 2017). Commerce provided a further reason to reject the high fish oil value derived from the HTS data: because "[i]t would be illogical to value an unrefined by-product like fish oil at a value greater than that of the main input, a value that also approaches that of the finished product, frozen fish fillets." Third Remand Decision, at 13 (quoting *Redetermination Pursuant to Court Remand Order in Vinh Hoan Corporation et al. v. United States* ("First Remand Decision"), slip op. at 80 (issued Aug. 3, 2015)). Commerce explained that a "by-product by definition is less valuable than the input from which it is derived." Third Remand Decision, at 14 (quoting *Monosodium Glutamate from the People's Republic of China: Issues and Decision Memorandum for the Final Determination of Sales at Less Than Fair Value*, 79

---

Memo"), slip op. at 3–6 (issued Mar. 13, 2013), Barcode No. 3124119-01.

ITADOC 58326, slip op. at 11 (issued September 29, 2014)). Commerce noted that its constructed value of fish oil is the best available information because "the use of Vinh Hoan's own information in its production of fish oil is necessarily the most representative, and specific, value." Third Remand Decision, at 9 (quoting *Final Results of Redetermination Pursuant to Vinh Hoan Corporation et al. v. United States* ("Second Remand Decision"), slip op. at 25 (issued Jan. 27, 2017)).

The CIT found that "Commerce's explanation is reasonable, and its findings are supported by substantial evidence." *Vinh Hoan Corp. v. United States* (*Vinh Hoan IV*), 317 F. Supp. 3d 1295, 1298 (Ct. Int'l Trade 2018). Vinh Hoan timely appealed. We have jurisdiction under 28 U.S.C. §§ 1295(a)(5) and 2645(c). This court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C.§ 1516a(b)(1)(B)(i).

## III

Vinh Hoan argues that Commerce's methodology for valuing fish oil is not in accordance with the law and that the HTS data constitutes the best available information.

First, Vinh Hoan contends that Commerce erred in selecting Indonesia when valuing the factors of production for fish oil because Commerce has not determined that Indonesia is a significant producer of fish oil. Vinh Hoan failed to raise this argument before Commerce and CIT. It is thus waived. It also lacks merit.

The statutory language Vinh Hoan cites does not help its cause. 19 U.S.C. § 1677b(c)(4) states that: "[t]he administering authority, in valuing factors of production under paragraph (1), shall utilize, to the extent possible, the prices or costs of factors of production in one or more market economy countries that are—(A) at a level of economic development comparable to that of the nonmarket economy

country, and (B) significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(4) (emphasis added). The statute does not explicitly discuss by-product offsets. *See Am. Tubular Prods.,* 847 F.3d at 1361; *DuPont Teijin Films China Ltd. v. United States*, 7 F. Supp. 3d 1338, 1345 (Ct. Int'l Trade 2014). Furthermore, even if this language were to apply in this context and required surrogate value countries to be significant producers of the by-product, it only requires Commerce to select such countries "to the extent possible." 19 U.S.C. § 1677b(c)(4). Given Commerce's regulatory preference for the selection of a single surrogate country for valuing all factors of production, 19 C.F.R. § 351.408(c)(2), it was reasonable for Commerce to select primarily Indonesian surrogate values[3] in its constructed by-product offset even if that country might not be a significant producer of unrefined fish oil. As Commerce has explained in other portions of this review, "[i]t is most accurate to rely on factor costs from a single surrogate country because sourcing data from a single country better reflects the trade-off between labor costs and other factors' costs, including capital, based on their relative prices." Second Remand Decision, at 22.

Second, Vinh Hoan argues that the use of DSFI's financial ratios to construct the fish oil by-product will lead to inaccurate results because there is no information on the record indicating that DSFI produces fish oil. We find that Commerce has provided a sufficient explanation on this point in its third remand redetermination. Commerce explained that "[b]ased on the simple production process for fish oil, as compared to the more complicated production process for frozen fish fillets, the ratios could be over-

---

[3] In one limited respect, in selecting a surrogate value for the fish waste input, Commerce appears to have used Philippine data. *See* Surrogate Values Memo, *supra* note 2, at 6.

stated." Third Remand Decision, at 16. Thus, any inaccuracy would only work in Vinh Hoan's favor in overstating the by-product offset. Moreover, just as with its arguments before Commerce, Vinh Hoan has not stated in this appeal "how[,] specifically[,] it believes the ratios are distorted or what adjustments should be made to them." *Id.*

Third, Vinh Hoan argues that the HTS data was the best available information for valuing fish oil and that Commerce's rejection of it was not supported by substantial evidence, noting that Commerce had used the HTS data in earlier stages of the proceeding. In its last remand determination, Commerce rejected the HTS data as not "sufficiently representative" of Vinh Hoan's unrefined fish oil because it includes unrefined and refined fish oil. Third Remand Decision, at 6. Commerce reasoned that the HTS data would be distorted by the inclusion of refined, packaged oil, which would logically be more expensive than the unrefined fish oil that Vinh Hoan produces. Commerce explained its preference, instead, for the constructed value of unrefined fish oil: "the use of Vinh Hoan's own information in its production of fish oil is necessarily the most representative, and specific, value." Third Remand Decision at 9 (quoting Final Results of Second Redetermination at 25). Vinh Hoan argues that there is no "information on the record quantifying how much of the fish oil . . . was unrefined." Appellant Br. 32. This does not detract from Commerce's reasoning that the HTS data is not specific to unrefined fish oil, however. So too Commerce's limited use of the HTS data in the earlier stages does not prevent Commerce from ultimately discarding such data. We find Commerce's methodology to be reasonable.

Finally, Vinh Hoan argues that Commerce erroneously concluded that the use of HTS data would "lead to an unreasonable result" in overvaluing Vinh Hoan's unrefined fish oil by-product because "the value of . . . [the refined fish oil] by-product [included in the HTS data] is larger than the main input, whole live fish, and even the subject

merchandise." Third Remand Decision, at 7. In particular, Commerce noted that "Indonesian HTS 1504.20.9000 values fish oil at $3.10/kg, while the SV for the main input, whole fish, is $1.79[/kg]." Third Remand Decision, at 13 (quoting First Remand Decision, at 80). Vinh Hoan points out that directly comparing the per weight values of the main input and the by-product ignores the fact that "when deducting the by-product offset from the subject merchandise's normal value . . . [Commerce] uses the value applicable to the amount of fish oil obtained from the [factors of production] used to obtain 1 kg of the subject merchandise" and "the quantity of fish oil obtained for 1 kg of the subject merchandise is 0.3492 kg." Appellant Br. 37. But, says Vinh Hoan, Commerce is comparing apples to oranges here, since 1 kg of fish waste does not to produce 1 kg of fish oil.

We agree that, while in the case of low value products (products requiring little processing) it may be appropriate to compare the main input value to the value of the ultimate product, any such comparison must be reasonable. Here, the comparison was flawed. It was an error for Commerce to rely on such a comparison of kilogram values, and we note that Commerce in its briefing did not defend this comparison. But Commerce did not determine that the HTS data was inappropriate simply because its value was greater than the main input. As discussed earlier, Commerce alternatively rejected the HTS data because the description of this data category included refined, packaged oil that is not specific to Vinh Hoan's unrefined, unpackaged oil. Since rejecting the data on this other ground was proper, Commerce's reliance on the input/final product comparison was harmless error.

Because we find Commerce's methodology was supported by substantial evidence and neither arbitrary or capricious or contrary to the law, the decision of the CIT is

**AFFIRMED**