# United States Court of Appeals for the Federal Circuit

---

**KAREN LI,**
*Petitioner*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2019-1046

---

Petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim No. 2011-016.

---

Decided: January 16, 2020

---

SUSAN POLL KLAESSY, Foley & Lardner LLP, Chicago, IL, argued for petitioner. Also represented by JILL NICHOLSON; JACK GABRIEL HAAKE, Washington, DC.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.; RAFAEL ALBERTO MADAN, MATTHEW T. SCODELLARO, Office of Justice Programs, Office of General Counsel, United States Department of Justice, Washington, DC.

---

Before NEWMAN, MOORE, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge*

Karen Li brought a claim for death benefits under the Public Safety Officers' Benefits Act (PSOBA) of 1976, Pub. L. No. 94-430 (codified as amended at 34 U.S.C. §§ 10281–10288). Ms. Li appeals a June 28, 2018, decision by the Bureau of Justice Assistance (BJA) holding that she was not entitled to the death benefits for her fiancé, San Diego Sheriff's Deputy Kenneth Collier. The BJA determined that Ms. Li was not a designated beneficiary under Deputy Collier's life insurance policy in accordance with 34 U.S.C. § 10281(a)(4)(B). Because the BJA's decision is supported by substantial evidence and properly applies the statute and the BJA's implementing regulation, 28 C.F.R. § 32.13, we *affirm* the BJA's denial of benefits.

## BACKGROUND

In February 2010, Sherriff's Deputy Kenneth Collier was patrolling Route 52 in San Diego County, California, where he observed a car driving the wrong way. Deputy Collier pursued the driver by driving down the middle lane of the highway, but the middle lane suddenly ended, and Deputy Collier lost control of the car as he attempted to exit the middle lane. Deputy Collier's car fell down the embankment on the side of the highway. After his rescue, Deputy Collier was flown to the hospital where he died.

Deputy Collier was survived by his fiancée, Karen Li. Deputy Collier and Ms. Li started dating in 2003 and owned a house together. The couple planned to get married three months after Deputy Collier's accident, choosing that date to combine the wedding celebration with Deputy Collier's 40th birthday. Deputy Collier told Ms. Li and their friends on multiple occasions that he had made arrangements for Ms. Li to be taken care of if anything ever happened to him, including through a video he recorded after his mother died in 2008. In that video, Deputy Collier

explained that: "My understanding is that the one-third interest that I have [in Deputy Collier's mother's] house upon my death or incapacitation reverts back—control back to [Deputy Collier's siblings], but all other assets, savings, everything like that, will be separate and go to Karen." J.A. 405–06.

Deputy Collier's job benefits included workers' compensation, retirement benefits, and life insurance. *In re Li*, No. 2011-016, at 6–7 (BJA June 28, 2018). Deputy Collier designated Ms. Li as a partial dependent in his workers' compensation program and as his beneficiary for his retirement benefits. *Id.* However, since 1997, Deputy Collier's designation form for his life insurance designated his mother as the primary beneficiary and his ex-girlfriend, Monique Stamp, as his contingent beneficiary. Deputy Collier signed forms in 2003, 2006, and 2007 reaffirming these beneficiary designations. While the forms in 1997–2006 explicitly listed the beneficiary designations above the signature line (identifying Deputy Collier's mother and Ms. Stamp by name on Deputy Collier's signed forms), the County of San Diego (the County) changed its policy in 2007 and stopped including this explicit listing on its form.

The life insurance policy stated that to change the beneficiary designation, "[y]ou must name or change Beneficiaries in writing. Writing includes a form signed by you or a verification from the Policyholder or Employer of an electronic or telephonic designation made by you. Your designation . . . [m]ust be delivered to the Policyholder or Employer during your lifetime." J.A. 202–03. There is no evidence that Deputy Collier ever provided any such written designation change, or otherwise made any effort to contact the County or the insurance company to make a beneficiary designation change.

At the time of Deputy Collier's death, Deputy Collier's mother had passed away, leaving Ms. Stamp as the designated beneficiary for his life insurance policy. Ms. Li

4

contested to the insurance company that she should be the beneficiary for Deputy Collier's life insurance policy. The insurance company determined that Ms. Li had a colorable claim to Deputy Collier's life insurance. But rather than determine whether Ms. Li had the stronger claim, the insurance company told Ms. Li that she could either settle the claim with Ms. Stamp or the insurance company would file an interpleader to have a court determine who had the better claim. Ms. Li and Ms. Stamp arrived at a settlement in which Ms. Li received $560,920 and Ms. Stamp received $25,000. The insurance company honored this settlement agreement.

Ms. Li then filed for PSOB death benefits. However, the BJA determined that Ms. Li had failed to show she was the designated beneficiary of Deputy Collier's life insurance policy. *Li*, No. 2011-016, at 19. In accordance with 34 U.S.C. § 10281(a) and 28 C.F.R. § 32.13, the BJA analyzed whether Ms. Li was the designee of a "legal and valid" life insurance policy. *Id.* at 9–11. To make this determination, the BJA analyzed California insurance law, determining that, with three limited exceptions, the law requires strict compliance with the terms of the insurance policy. *Id.* at 11–12. Those exceptions include (1) the insurance company waives strict compliance, (2) it is beyond the power of the policyholder to comply, or (3) the policyholder "pursued the course pointed out by the laws of the association [i.e. the insurance company], and has done all in his power to change the beneficiary" but failed to properly make the change. *Pimentel v. Conselho Supremo de Uniao Portugueza do Estado da Cal.*, 57 P.2d 131, 133 (Cal. 1936). The BJA determined that Ms. Li failed to show any of those exceptions were met and denied Ms. Li's claim. *Li*, No. 2011-016, at 18–19.

Ms. Li now appeals. We have jurisdiction under 34 U.S.C. § 10287.

DISCUSSION

Ms. Li argues that the BJA erred by failing to properly apply the statute and implementing regulations, failing to correctly apply California law, and failing to support its decision with substantial evidence.

The PSOBA directs the BJA to pay a death benefit to the proper claimant when a public safety officer is killed in the line of duty. 34 U.S.C. § 10281(a). The PSOBA provides a hierarchy of potential claimants for determining the proper claimant, eventually reaching 34 U.S.C. § 10281(a)(4)(B), which dictates that "if there is no surviving spouse of the public safety officer and no surviving child," the proper claimant is "the surviving individual . . . designated by the public safety officer to receive benefits under the most recently executed life insurance policy of the public safety officer on file at the time of death." *Id.* § 10281(a)(4)(B). The BJA promulgated 28 C.F.R. § 32.13 to determine when a claimant is the beneficiary of the public safety officer's life insurance policy. In relevant part, the regulation provides that "[a]n individual . . . is designated as beneficiary of a life insurance policy of such officer as of such date, only if the designation is, as of such date, legal and valid (as a designation of beneficiary of a life insurance policy) and unrevoked (by such officer or by operation of law) or otherwise unterminated." 28 C.F.R. § 32.13.

We review the BJA's application of its own regulations to determine "(1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim." *Amber-Messick v. United States*, 483 F.3d 1316, 1321 (Fed. Cir. 2007). In this case, we review the BJA Director's determination that Ms. Li was not a designated beneficiary under Deputy Collier's life insurance policy.

6

## A

We first turn to whether the BJA correctly applied the statute and the implementing regulation. We review an agency's interpretation of a statute under the *Chevron* framework. *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). We first determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If "Congress either had no intent on the matter, or [] Congress's purpose and intent is unclear," we consider whether the agency's interpretation is based on a permissible construction of the statutory language at issue. *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000); *see also Chevron*, 467 U.S. at 843. For the second step, "the court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction." *Chevron*, 467 U.S. at 843 n.11. So long as the agency's construction of the term in the statute is reasonable, *Chevron* "requires a federal court to accept the agency's construction . . . even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

When an officer dies without a surviving spouse or children, the statute provides a hierarchy to determine the proper beneficiary. Toward the bottom of this statutorily-defined hierarchy, the PSOBA allows a person "designated by the public safety officer to receive benefits under the most recently executed life insurance policy of the public safety officer on file at the time of death" to recover the benefits. 34 U.S.C. § 10281(a)(4)(B). At this step in the hierarchy, Congress's intent is clear that the public safety officer's life insurance designation determines the proper beneficiary for PSOB benefits. The BJA's implementing regulation, 28 C.F.R. § 32.13, is entirely consistent with this intent and clarifies that an individual "is designated as beneficiary of a life insurance policy of such officer" if

the designation is "legal and valid (as a designation of beneficiary of a life insurance policy) and unrevoked (by such officer or by operation of law) or otherwise unterminated." 28 C.F.R. § 32.13. The BJA evaluated whether Deputy Collier's insurance policy and designations were "legal and valid" under California state contract law. *Li*, No. 2011-016, at 9–12.

Ms. Li does not contest the BJA's reliance on California state contract law; she instead argues that the BJA's analysis in determining that she was not the designated beneficiary did not properly consider the totality of the circumstances. Specifically, Ms. Li argues the BJA should have found determinative Deputy Collier's 2008 video and the testimony that Deputy Collier intended for Ms. Li to receive all of his benefits. We find Ms. Li's approach to be inconsistent with the text of § 10281(a)(4)(B). Congress intended for the life insurance policy to determine the proper beneficiary for PSOB benefits, which required the BJA to analyze the beneficiary designation as set out in the insurance policy. The BJA properly followed this analysis, which leaves no room for Ms. Li's proposed totality of the circumstances test. Ms. Li was therefore required to show she was the designated beneficiary under the life insurance policy.

B

Having determined that the BJA correctly applied § 10281(a)(4)(B), we next turn to whether the BJA's decision was arbitrary and capricious and supported by substantial evidence. We determine whether a decision is arbitrary and capricious based on "whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). This includes whether the BJA misapplied California law when determining if the life insurance

8

policy and beneficiary change were legal and valid. *Glob. NAPs Cal., Inc. v. Pub. Utils. Comm'n*, 624 F.3d 1225, 1231 (9th Cir. 2010).

California law requires strict compliance with the terms of a life insurance policy unless any one of three exceptions is met. *Pimentel*, 57 P.2d at 133. Those exceptions are (1) the insurance company waives strict compliance, (2) it is beyond the power of the policyholder to comply, or (3) the policyholder "pursued the course pointed out by the laws of the association [i.e. the insurance company], and has done all in his power to change the beneficiary" but failed to properly make the change. *Id.* Ms. Li argues that the first and third exceptions apply in this case, relying heavily on the insurance company's letter that Ms. Li could either settle her claim with Ms. Stamp or the insurance company would interplead the claim for the courts to determine the proper beneficiary.

As to the first exception, California law is clear that interpleader by an insurance company, much less the threat of interpleader, does not constitute waiver of strict compliance. *Id.* at 132–33. Yet, Ms. Li points out that *Saunders v. Stevers*, 221 Cal. App. 2d 539, 540 (Cal. Dist. Ct. App. 1963), appears to contravene *Pimentel*. In that case, the insured sent an informal letter to the insurance company expressing her desire to change her beneficiary designation. But the insurance company did not find this letter sufficient to change the prior designation and sent the insured the appropriate forms. After receiving these forms, the insured did not immediately complete the forms or return them to the insurance company, and she died before returning the forms. The California District Court of Appeals determined that the designation had been changed, stating that the insured's "acts were sufficient" to change the beneficiary designation because she exercised her "broad right to change beneficiary by notice in writing given to the company." *Saunders*, 221 Cal. App. 2d at 541. In its decision, the court stated that "[w]here, as here, the

company makes no contest but interpleads the contesting beneficiaries and pays the proceeds of the policy into court, a liberal rule obtains and courts of equity seek to do that which the insured intended." *Id.* at 542.

The *Saunders* opinion is unclear regarding the role interpleader played in the analysis. But the Ninth Circuit in *Manhattan Life Insurance v. Barnes* determined that *Saunders* did not conflict with the governing standard in *Pimentel* because *Saunders* merely discussed the effect of an interpleader in the context of the third *Pimentel* exception rather than the first. 462 F.2d 629, 632 (9th Cir. 1972). We agree with the Ninth Circuit's reasoning. As such, the BJA correctly interpreted and applied California law when determining that the insurance company did not waive strict compliance.

This leaves Ms. Li's arguments regarding the third exception. Under the third exception, a claimant must show that the insured "pursued the course pointed out by the [insurance company], and has done all in his power to change the beneficiary." *Pimentel*, 57 P.2d at 133. California law has since interpreted this to mean that the insured must make "every reasonable effort under the circumstances" to properly change the beneficiary designation. *See Manhattan Life Ins.*, 462 F.2d at 633; *West Coast Life Ins. v. Clarke*, 24 F. Supp. 3d 933, 939–40 (C.D. Cal. 2014). We are unaware of any case that has granted the claimant a change of designation under this exception where the insured never contacted (or attempted to contact) someone at the insured's place of work or at the insurance company to indicate a desire to change the insurance policy's designated beneficiary. Interpleader or a threat of interpleader may indeed lower the threshold for whether a particular action constitutes "every reasonable effort under the circumstances" to change a beneficiary designation. *See Manhattan Life Ins.*, 462 F.2d at 633. But it was reasonable under the circumstances here for the BJA to find that the insured must first make some attempt to change the beneficiary

designation, or there is nothing that can qualify as "every reasonable effort under the circumstances" to make that change.

Substantial evidence supports the BJA's determination that Deputy Collier never attempted to contact anyone at the insurance company or the County about changing the designation for his life insurance. *Li*, No. 2011-016, at 18 n.57. During the proceeding, the BJA asked the County if "there [was] any email correspondence with Sheriff Collier regarding beneficiary designations?" J.A. 2072. The County responded "No, we have no email correspondence on file regarding Sheriff Collier's beneficiary designations." *Id.* Ms. Li contends that these responses were deficient, and that she is therefore entitled to further discovery. But Ms. Li has not identified any evidence or basis that suggests the County's response was somehow deficient. It was therefore proper for the BJA to weigh this evidence to determine that Deputy Collier had not contacted the County about changing his beneficiary designation.

Ms. Li also asserts that Deputy Collier attempted to change his life insurance beneficiary designation when he changed his retirement benefits and worker's compensation. She argues that the testimonies of Deputy Collier's family and friends show that Deputy Collier believed he had changed his beneficiary designation. The BJA found to the contrary, however, based at least in part on Deputy Collier's continual ratification of the designations in his life insurance policy, thereby indicating his intent to not change the life insurance designation. Our appellate function is to review BJA findings deferentially under the substantial evidence standard. A decision is supported by substantial evidence when it is based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Here, there is enough evidence for a reasonable mind to reach the BJA's conclusion that Deputy Collier's actions did not rise to "every reasonable effort" to

properly change his beneficiary designation. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *Viet I-Mei Frozen Foods Co. v. United States*, 839 F.3d 1099, 1106 (Fed. Cir. 2016). Because the BJA reasonably found that the third exception was not met, the BJA was therefore required to adhere strictly to the terms of the life insurance policy.

The terms of the insurance policy state that "You must name or change Beneficiaries in writing. Writing includes a form signed by you or a verification from the Policyholder or Employer of an electronic or telephonic designation made by you. Your designation . . . [m]ust be delivered to the Policyholder or Employer during your lifetime." J.A. 202–03. The only writings of record are the 1997, 2003, 2006, and 2007 beneficiary designations. These writings clearly indicate that Deputy Collier's mother was his primary beneficiary and that Ms. Stamp was his contingent beneficiary. *See* J.A. 1451. As a result, the BJA's determination that Ms. Li was not designated as a beneficiary in Deputy Collier's life insurance policy under 35 U.S.C. § 10281(a) and 28 C.F.R. § 32.13 was not arbitrary or capricious and was supported by substantial evidence.

CONCLUSION

For the foregoing reasons, the BJA's denial of benefits to Ms. Li under the PSOBA is

**AFFIRMED**

No costs.